UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| EQUITABLE FINANCIAL LIFE INSURANCE COMPANY )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>LYNCH et al., )<br>)<br>    Defendants. )<br>) | 2:24-cv-1374-EGL |

## MEMORANDUM OPINION

This is an interpleader action to determine the proper disposition of funds payable under an annuity. Equitable Financial Life Insurance Company issued an annuity to James P. Lynch that included a benefit to his designated beneficiary (or beneficiaries) upon his death. When Mr. Lynch passed away, a dispute arose over whether the rightful beneficiary was Mr. Lynch's wife, Tynette G. Lynch, or his daughters, Amy L. Goss and Tracy L. Hays. That dispute is not before the Court today. Instead, the issue here is whether Mr. Lynch's decision to pledge the annuity to Renasant Bank as security for a loan was effective to grant Renasant a right to the death benefit, or whether restrictions on assignment in the agreement between Mr. Lynch and Renasant rendered the assignment ineffective.

On August 22, 2025, Renasant filed a Motion for Summary Judgment, claiming entitlement to part of the funds. Doc. 50. Goss and Hays jointly filed a Response and a Motion for Partial Summary Judgment, asserting that Renasant had never acquired an interest in the funds. Doc. 52. Having considered the motions and evidentiary submissions, the Court finds that the motion filed by Renasant is due to be granted in full and the motion of Goss and Hays is due to be denied for the reasons given below.

## BACKGROUND

Equitable Life Insurance Company commenced this action on October 9, 2024, by filing an interpleader complaint in this Court. Doc. 1. The complaint details the competing claims of Mrs. Lynch, Goss, and Hays, to the death benefit proceeds from an annuity owned by the deceased, James P. Lynch. *See* Doc. 1. After learning of Renasant's claim to part of the funds, Equitable amended its complaint to add Renasant as a competing claimant. *See* Doc. 22.

The following facts are undisputed. Equitable issued the annuity in dispute here to Mr. Lynch on October 7, 2008. Doc. 22 at ¶9; Doc. 52 at 5. On August 6, 2024, Mr. Lynch died, and as a result, a death benefit associated with the annuity became due to one or more beneficiaries. Doc. 22 at ¶17. On October 9, 2024, Equitable commenced the present action because it could not determine the proper beneficiary of the death benefit. *See* Doc. 1.

Two months later, Renasant informed Equitable that Mr. Lynch had pledged the proceeds associated with the annuity to Renasant as security for a loan. Doc. 22 at ¶19. Equitable first advised Renasant that it would not honor the assignment, but later amended its complaint to add Renasant as a competing claimant. *See* Doc. 22.

Renasant claims entitlement to at least part of the proceeds associated with the annuity based on a previous loan it made to Mr. Lynch. On May 15, 2018, Renasant loaned Mr. Lynch $150,000. *See* Doc. 50 at 3; Doc. 52 at 4. The loan was secured by a Commercial Pledge Agreement and a Control Agreement and Acknowledgement of Security Interest, which pledged the annuity. Doc. 50 at 3; Doc. 52 at 4; Doc. 49, Ex. A-1. Mr. Lynch renewed the loan by a promissory note in 2022, which said that it continued to be secured by the annuity. Doc. 49, Ex. A-2. Relevant here, the annuity contains an assignment and transferability provision:

> This Contract may be assigned as collateral or security for a loan during the first Contract Year only. We [Equitable] will not be bound by an assignment unless we have received it in writing at our Processing Office and agree to it. Your [Mr. Lynch's] rights and those of any other person referred to in this Contract will be subject to the assignment. We assume no responsibility for the validity of an assignment or for any rights or obligations between you and the Assignee. An absolute assignment will be considered a change of ownership to the assignee.

Doc. 22-1 at 67. The parties agree that the assignment by Mr. Lynch to secure the loan did not comply with the contractual limitations above. The annuity limited assignments to ones made "during the first Contract Year only" and provided that

3

Equitable would not be bound by an assignment unless it was received at its processing office and Equitable agreed to it. *Id.* The assignment by Mr. Lynch of the annuity proceeds was made in 2018, which is not during the first contract year, and the assignment was not received by Equitable at its home office. Doc. 22 at ¶¶19-20.

As part of the pledge agreement, Mr. Lynch "agree[d] to pay upon demand all of [Renasant]'s costs and expenses, including [Renasant]'s attorneys' fees and [Renasant]'s legal expenses, incurred in connection with the enforcement of this Agreement." Doc. 49 at 10. Renasant thus seeks attorneys' fees and expenses related to this action. Doc. 50 at 4. Hays and Goff do not dispute the amounts owed to Renasant, but assert that Renasant can recover them only from Mr. Lynch's estate, not from the annuity funds. Doc. 52 at 5.

## STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). A genuine dispute as to a material fact exists "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Greenberg v. BellSouth*

4

*Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (quoting *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001)). A fact is "material" if it could "affect the outcome" of the case. *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1303 (11th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In considering a motion for summary judgment, the Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## ANALYSIS

Equitable brought an interpleader complaint against four defendants claiming an interest in the annuity's death benefit: Renasant, Mrs. Lynch, Goss, and Hays. *See* Doc. 22. Renasant claims entitlement to the funds as an assignee, based on a loan it made to Mr. Lynch in 2018. Doc. 50 at 2-3. The cross-motions before the Court today concern only a portion of the funds. Renasant contends that it is entitled to summary judgment as to $100,826.44 of the funds interpleaded by Equitable as well as attorneys' fees and expenses related to enforcing its pledge agreement with Mr. Lynch. *See* Doc. 50 at 4. Mrs. Lynch does not dispute Renasant's claim to the funds. *Id.* at 2-3. Goss and Hays argue that Renasant has no right to the death benefit proceeds because the assignment was invalid. Doc. 52 at 3-4.

Renasant moved for summary judgment, arguing that the contractual limitations on assignment are enforceable only by Equitable and that when Equitable filed this interpleader, it waived the limitations. *See* Doc. 50. Goss and Hays responded in opposition and filed a motion for partial summary judgment. *See* Doc. 52. They argue that Renasant is not entitled to the funds because the assignment was void *ab initio* for failure to comply with the contract's limitations on assignment. *Id.* at 10.

The cross-motions boil down to two main questions. First, who has the right to challenge the validity of the assignment? And second, did Equitable waive any contractual restrictions on the assignment by interpleading the funds? We find that Alabama law is clear on both questions and clearly favors Renasant.

It has long been the rule in Alabama that a limitation on the right of assignment "is solely for the benefit of the company, and, if it does not take advantage of it, no one else may do so." *Missouri State Life Ins. Co. v. Robertson Banking Co.*, 134 So. 25, 27 (Ala. 1931); *Hamilton v. Hamilton*, 51 So. 2d 13, 18 (Ala. 1950) ("[S]uch limitations are solely for the benefit of the company."). Here, while the annuity provided that an assignment could be made only in the first year of the contract, this provision was solely for the benefit of Equitable. Whether the assignment was valid in light of this contractual provision is an issue that can be raised only by Equitable, not by Goss or Hays. *See e.g.*, *Auto-Owners Ins. Co. v.*

*Abston*, 822 So. 2d 1187, 1193 (Ala. 2001) (citing *Restatement (Second) of Contracts* § 322, cmt. d (1979)).

The assignment did not comply with the limitations in the contract because it was made outside of the one-year provision and was not properly delivered. *See* Doc. 22-1 at 67. But those restrictions would at most give *Equitable* the right to challenge the validity of the assignment, and Equitable has waived that right by commencing this interpleader action. *See McDonald v. McDonald*, 102 So. 38, 41 (Ala. 1924) ("The provisions of the policy … might, as a matter of course, to the extent they affected its interests, be waived, and were waived when the [] company brought the fund into court for an adjudication … ."). An action in interpleader by an insurer is a waiver of specific policy requirements. *Hobson v. Life Ins. Co. of N. Am.*, No. 09-cv-1481, 2011 WL 13286124, at *6 (N.D. Ala. Nov. 22, 2011) ("The insurance company may waive strict compliance with the policy, and is deemed to have waived those requirements by interpleading the policy proceeds."); *Norton v. Norton*, 193 So. 2d 750, 754 (Ala. 1966). By adding Renasant as a competing claimant and by interpleading the funds, Equitable has waived the requirement of strict compliance with the policy's restriction on assignment. Thus, even though the proceeds were assigned to Renasant outside of the contractual time limit, "the action of interpleader by the insurer … had the effect of waiving compliance with its rule of assignability." *Herbert v. Haggermaker*, 296 So. 2d 915, 917 (Ala. Civ. App. 1974).

Goss and Hays argue that only certain "technical deficiencies" can be waived by an insurer's filing of an interpleader action and that "substantive provisions" protecting the insurer cannot be waived. Doc. 52 at 13-14. Goss and Hays admit that the failure to correctly deliver the assignment is sufficiently technical to be waivable, but they argue that a failure to comply with a time limitation is not a waivable defect. *Id.* As an initial matter, it is not clear why failing to deliver the assignment to Equitable would be waivable, but delivering the assignment late would not. More critically, this distinction is not supported by law. Alabama law provides that a limitation on assignment is solely for the benefit of the insurer and does not make a distinction between kinds of assignment limitations.[1] Any limitation on assignment is for the benefit of Equitable, and Equitable waived its right to enforce any limitation by commencing this action.

Goss and Hays argue that the Court should apply a "substantial compliance standard" and hold that Equitable has waived compliance only if the assignment substantially complied with any policy restrictions. Doc. 52 at 11-12. However, Goss and Hays expressly concede that this standard does not apply. The Alabama

---

[1] Both parties cite COUCH ON INSURANCE to support their contentions. *See* Doc. 50 at 5; Doc. 52 at 10-13, 15. As to the type of provisions that are for the benefit of the insurer, COUCH states: "As provisions prohibiting assignment are for the benefit of the insurer, only the insurer may complain that the assignment is in violation of the prohibitory clause." JORDAN PLITT ET AL., COUCH ON INSURANCE § 35:5 (3d ed. 2025). We agree with Renasant that as a provision entirely prohibiting assignment is for the benefit of the insurer, it logically follows that a mere time limitation on assignment is for the benefit of the insurer.

Supreme Court was clear in *Murphy v. Gibson* that "an insured may change his beneficiary without abiding by the specified requirements of his policy, which require that the change be noted thereon, if the insurer waives the requirement, and an interpleader by it is such a waiver." 465 So. 2d 373, 376 (Ala. 1985).

Goss and Hays also argue that the assignment was void *ab initio* because it was made outside the contractual time limit for assignments, but they provide no support for this contention. Doc. 52 at 10. In general, a contract is void *ab initio* if it "seriously offends law or public policy." *Landcastle Acquisition Corp. v. Renasant Bank*, 57 F.4th 1203, 1223 (11th Cir. 2023) (discussing void and voidable contracts, citing *Restatement (Second) of Contracts*). Goss and Hays do not argue that accepting a belated assignment would meet this high standard. And for good reason. If Mr. Lynch had assigned an interest to Renasant one day after the period for assignments ran and Equitable had accepted it, no one could seriously contend that Equitable was powerless to accept the assignment. Like a landlord who accepts rent after its due date, the assignment limitations that protected Equitable were its to enforce or waive, whether the assignment was late by one day or one decade. The assignment may have been voidable, but it wasn't void.

And, as noted above, only Equitable could have raised the time limit to try to void the assignment, but it has instead interpleaded the funds at issue into this Court and thus waived any challenge to the assignment. Accordingly, the Court holds that

9

the assignment to Renasant is valid. Goss and Hays concede that "[m]oney owed pursuant to a valid assignment would need to be paid from the Annuity prior to distribution of the death benefit to any beneficiaries." Doc. 52 at 18. Renasant thus is entitled to a portion of the funds as a matter of law, prior to any further distribution of the death benefit.

Relatedly, Renasant has requested under the pledge agreement attorneys' fees and expenses incurred in obtaining the funds it was owed under the agreement. Doc. 50 at 4, 9. Hays and Goss do not contest the amount of fees and expenses, but instead assert only that they must come from Mr. Lynch's estate, not the collateral he pledged to obtain his loan from Renasant. Doc. 52 at 4-5. But under Alabama law, "where a note contain[s] a provision requiring the mortgagor to pay all costs of collecting or securing or attempting to collect or secure the note, including a reasonable attorney fee, … '[t]he claim for an attorney's fee is as much a part of the contract as any other feature of it. Such fees, under the contract, become an effective part of the main debt.'" *Austin Apparel, Inc. v. Bank of Prattville*, 872 So. 2d 158, 166 (Ala. Civ. App. 2003) (quoting *Taylor v. Jones*, 276 So. 2d 130, 133 (1973)). Thus, Renasant is also entitled to its attorneys' fees and costs related to enforcing the pledge agreement.

As to the amount, "even where (as here) a contract allows for recovery of attorney's fees, requests for contractually-authorized attorney's fees are subject to a

reasonableness review and are left to the discretion of the trial court." *Cincinnati Ins. Co. v. Case Constr., LLC*, No. 19-cv-0071, 2019 WL 2918119, at *5 (S.D. Ala. July 8, 2019) (citing *Willow Lake Residential Ass'n, Inc. v. Juliano*, 80 So. 3d 226, 241 (Ala. Civ. App. 2010)). The parties indicated during the status conference held with the Court on January 23, 2026, that if the Court ruled that Renasant was entitled to attorneys' fees and expenses, the parties anticipated that they could reach an agreement regarding a reasonable amount for fees and expenses. If the parties cannot resolve the issue of what Renasant is owed, Renasant may move for fees and costs, with argument and proof regarding the reasonableness of the amount it seeks.

## CONCLUSION

The Court **GRANTS** Renasant's motion for summary judgment. Doc. 50. The Court **DENIES** Goss and Hays' motion for partial summary judgment. Doc. 52. Judgment will be entered by a separate order.

**DONE** and **ORDERED** this 30th day of January, 2026.

_____
**EDMUND G. LACOUR JR.**
UNITED STATES DISTRICT JUDGE